## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **LARS ERICKSON,** | ) | **CASE NO. 8:11CV127** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **MICHAEL JOHN BLAKE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion to Dismiss (Filing No. 11) submitted by Defendant Michael John Blake ("Blake"), seeking dismissal of the Complaint (Filing No. 1) filed by Plaintiff Lars Erickson ("Erickson"), under Federal Rule of Civil Procedure 12(b)(6). Alternatively, Blake asks the Court to transfer this action under Federal Rule of Civil Procedure 12(b)(2) and (3). For the reasons discussed below, the Motion will be granted in part, and this case will be transferred to the United States District Court for the District of Oregon.

## FACTUAL BACKGROUND

For purposes of the pending Motion to Dismiss, the factual assertions in the Complaint are accepted as true, although the Court need not accept Erickson's conclusions of law.

Erickson is a Nebraska resident currently residing in Omaha. He owns a federal copyright registration for the work entitled "Pi Symphony," that he wrote in 1992. In the fall of 2001, Erickson developed and published a web site captioned "Pisymphony.com." Beginning in approximately May 2010, he included a video on the website with a performance of the Pi Symphony, as well as a detailed description of how the Pi Symphony

was developed. A search of the terms "Melody of Pi" utilizing the Google search engine discloses his copyrighted work within the first twenty search results.

Blake is a resident of Oregon currently residing in Portland.  On or about February 12, 2011, he published the work "What Pi Sounds Like" on the web site "YouTube."  Upon learning about Blake's work, Erickson contacted Blake and informed him that Erickson owns a copyright in the work "Pi Symphony."  Erickson told Blake that the work "What Pi Sounds Like" sounded substantially similar to his own "Pi Melody"[1] and infringed on his copyright.  Initially, Blake agreed to work with Erickson to avoid any infringement claims, but ultimately rejected Erickson's offer to license the work.  Blake then re-published his work on YouTube on or about April 1, 2011.  Blake is offering for sale copies of the alleged infringing work via the ITunes and CD Baby websites.  Erickson claims that Blake sells his work in the State of Nebraska, and that Erickson purchased a copy of Blake's work from iTunes within the State of Nebraska.

Erickson filed his Complaint on April 5, 2011.  Count one of the Complaint alleges federal copyright infringement, claiming that Blake's work is substantially similar to Erickson's "Melody of Pi."  Erickson claims that Blake's work destroys the public's identification of Erickson's work causing Erickson to suffer irreparable harm and lost profits. Count two alleges unfair competition[2] by creation of a likelihood of public confusion as to the original source of Erickson's work.  Erickson seeks actual damages, disgorgement of

---

[1] The Complaint and abstract of the federal copyright registration refer to Erickson's work as the "Pi Symphony," although the Complaint at times uses the terms "Pi Melody."

[2] Whether this claim is asserted under federal or state law is unclear. Count two claims that the Court should assume pendent jurisdiction over count two because it is substantially related to Erickson's claim in count one.

2

profits, statutory damages, and reasonable expenses and attorneys' fees.  Erickson also seeks an injunction against Blake prohibiting future infringement.

## STANDARDS OF REVIEW[3]

### Rule 12(b)(2)

To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  When jurisdiction has been challenged, "the plaintiff has the burden of proving facts supporting personal jurisdiction,"  *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *Dever* 380 F.3d at 1072), but a plaintiff need only "establish[] a prima facie case" that personal jurisdiction exists. *Steinbuch*, 518 F.3d at 585 (citing *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006)).  The plaintiff's showing "must be tested, not by the pleading alone, but by affidavits and exhibits presented" in support of and in opposition to the motion to dismiss for lack of personal jurisdiction.  *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (quoting *Dever* 380 F.3d at 1072).

---

[3] Because the Court finds personal jurisdiction lacking and venue improper, it does not reach the merits of Blake's Motion under Rule 12(b)(6).  Therefore, the standard of review for that rule is not included here.

**Rule 12(b)(3)**

Fed. R. Civ. P. 12(b)(3) permits a party to raise the defense of "improper venue" by

motion.  When jurisdiction is based solely on diversity of citizenship, proper venue may be

found in:

> "(1) a judicial district where any defendant resides, if all defendants reside
> in the same State; (2) a judicial district in which a substantial part of the
> events or omissions giving rise to the claim occurred or a substantial part of
> property that is the subject of the action is situated; or (3) a judicial district in
> which any defendant is subject to personal jurisdiction at the time the action
> is commenced, if there is no district in which the action may otherwise be
> brought."

28 U.S.C. § 1391(a).

Venue in civil actions not founded solely on diversity of citizenship are governed by

28 U.S.C. § 1391(b).  Section 1391(b) states:

> A civil action wherein jurisdiction is not founded solely on diversity of
> citizenship may, except as otherwise provided by law, be brought only in (1)
> a judicial district where any defendant resides, if all defendants reside in the
> same State, (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of property
> that is the subject of the action is situated, or (3) a judicial district in which
> any defendant may be found, if there is no district in which the action may
> otherwise be brought.

28 U.S.C. § 1391(b).

Civil actions arising under any federal statute "relating to copyrights or exclusive

rights in mask works or designs may be instituted in the district in which the defendant or

his agent resides or may be found."  28 U.S.C. § 1400(a).

4

**DISCUSSION**

**Personal Jurisdiction over Blake**

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute are satisfied and (2) whether the exercise of jurisdiction over this Defendant will violate the Due Process Clause of the Fourteenth Amendment. *Coen*, 509 F.3d at 905 (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536,[4] has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77 (Neb. 1995). Thus, the Court need only determine whether the assertion of jurisdiction in this case offends constitutional limits.

"The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit

---

[4]Neb. Rev. Stat. § 25-536 provides:

A court may exercise personal jurisdiction over a person:
    (1) Who acts directly or by an agent, as to a cause of action arising from the person:
        (a) Transacting any business in this state;
        (b) Contracting to supply services or things in this state;
        (c) Causing tortious injury by an act or omission in this state;
        (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
        (e) Having an interest in, using, or possessing real property in this state; or
        (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
    (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

5

does not offend 'traditional notions of fair play and substantial justice.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, No 10-2460, — F.3d —, 2011 WL 2899147, at *3 (8th Cir. July 21, 2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state . . . , to such a degree that it 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); and *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id.* (citing *Hall*, 466 U.S. at 414). Erickson does not claim that Blake is subject to general jurisdiction in Nebraska, thus, the Court need only look to whether it may exercise specific jurisdiction over Blake.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476 (quoting *International Shoe*

*Co.*, 326 U.S. at 320). *See also Dever*, 380 F.3d at 1073. In light of the foregoing principles, the Eighth Circuit "instruct[s] courts to consider the following factors when resolving a personal jurisdiction inquiry: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dever*, 380 F.3d at 1073-74 (internal quotation marks, brackets, and citation omitted). *See also Sybaritic, Inc. v. Interport Intern., Inc.*, 957 F.2d 522, 524 (8th Cir. 1992) (explaining that this five-factor framework "incorporates the notions of both 'minimum contacts' and 'fair play and substantial justice'"). The parties do not specifically address the factors in their arguments, but the Court's own analysis of the factors demonstrates that it lacks personal jurisdiction over Blake.

1.   *Nature and Quality of Blake's Contacts with Nebraska*

Erickson alleges that Blake's contacts with Nebraska are (1) uploading his infringing work "What Pi Sounds Like" on YouTube, (2) placing the work for sale by download on iTunes and CD Baby, because both are generally accessible to all states, and (3) continuing to violate copyright law after failed negotiations with a Nebraska resident. Further, Erickson claims that Blake derives income from Nebraska resulting in the sale of his work on iTunes. Erickson has provided no evidence or allegation of such income, however, other than his own purchase of Blake's work. Last, there is no indiction that Blake availed himself of the laws of Nebraska when negotiating a license agreement with Erickson. These contacts are at most, "random, fortuitous, [and] attenuated," and do not give rise to the requisite level of contacts necessary to satisfy the constitutional requirements of due process. *Steinbuch*, 518 F.3d at 586 (internal quotations omitted).

7

Therefore, the Court concludes that the nature and quality of Blake's contacts with Nebraska do not suffice to subject Blake to the jurisdiction of this Court.

2.    *Quantity of Blake's Contacts With Nebraska*

Blake has never been in Nebraska.  Erickson claims that the posting of Blake's work "on iTunes and YouTube was clearly a business related activity that was guaranteed to yield internet consumers nationwide, which logically includes the location of the copyright owner in Nebraska." (Pl. Br., Filing No. 21, at 7.)  The Court concludes that this conduct does not demonstrate that Blake purposefully availed himself of the privilege of conducting activities within the state of Nebraska.  *Burger King,* 471 U.S. at 475.  As stated above, the only evidence or allegation of income received by Blake from Nebraska is Erickson's own purchase of a single copy of Blake's work on iTunes.  To conclude that Blake must be subject to personal jurisdiction in Nebraska based on such contacts would offend the "traditional notions of fair play and substantial justice."  *International Shoe Co.*, 326 U.S. at 316.  The quantity of Blake's contacts with the forum state are *de minimus*, at most.

3.    *The Relationship Between the Cause of Action and Blake's Contacts in Nebraska*

Erickson's argument for the relationship of Blake's contact to Erickson's cause of action is based on two theories.  First, Erickson argues that Blake knew that the brunt of the effects of uploading his work would be felt by Erickson in Nebraska.  This theory is based on the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984).  The effects test allows "personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state."  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390-91 (8th Cir. 1991) (internal quotations

8

omitted); *see also Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Coen v. Coen*, 509 F.3d 900, 906 (8th Cir. 2007) (quoting *Finley v. River North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998)).  If a defendant's intentional acts are aimed at a particular forum with knowledge that the brunt of the injury caused by those acts would be suffered in that forum, then the defendant must reasonably anticipate being haled into court in that forum. *See Denenberg v. Ruder*, No. 8:05CV215, 2006 WL 379614, at *3-4 (D. Neb. Feb 15, 2006) (discussing *Denenberg v. Berman*, No. 4:02CV7 (D. Neb. Dec. 20, 2002)).

Erickson does not claim that Blake initially posted his video on YouTube with knowledge that it would affect Erickson's copyright.  Erickson, however, argues that Blake knew or should have known that selling a work on iTunes, and posting a work on YouTube that infringed on a Nebraska resident's copyright would result in injury to the copyright holder in Nebraska.  Erickson claims that Blake became aware of the effects in Nebraska after Erickson contacted Blake in response to Blake's YouTube video.  These arguments insufficiently allege that Blake knew the brunt of any injury he caused would be felt in Nebraska.  In *Calder*, the plaintiff claimed that she had been libeled by the *National Enquirer*, a Florida-based newspaper with a national circulation.  465 U.S. at 784.  The Supreme Court in *Calder* found that the defendants' intent to direct its activities to the forum state could be inferred from the defendants' knowledge that (1) the article it published would have a "potentially devastating impact" on the plaintiff, and (2) the "brunt" of that injury would be felt in California, where the publication had its largest circulation. *Calder*, 465 U.S. at 788-89.

In contrast, there is no allegation and no evidence that Blake was aware that Erickson was a resident of Nebraska.  Erickson argues that, "[a]s alleged in the Complaint and corroborated by Mr. Blake's declaration, Mr. Blake was and is currently aware of the fact that Mr. Erickson resides in Nebraska and was therefore aware that the entirety of the harm from Mr. Blake's actions would fall in Nebraska."  The Complaint alleges that when Erickson became aware of Blake's work, he contacted Blake "and informed him that Plaintiff owns a copyright in and to the work Pi Symphony."  (Compl. ¶ 9.)  There is no other reference in the Complaint to Blake's awareness of Erickson's residency.  Blake's declaration (Filing No. 13-1) likewise makes no reference to his knowledge of Erickson's residency.  The Court cannot infer Blake's knowledge simply because he was contacted by Erickson.  No allegations or evidence suggest that Blake was aware that Erickson was a Nebraska resident.

Even if Blake was aware that Erickson was a Nebraska resident, no evidence suggests Blake knew the brunt of any injury would be felt in Nebraska.  In *Calder*, the defendant knew that its actions would have a significant impact in California.  *Calder*, 465 U.S. at 788-89 ("In sum, California is the focal point both of the story and of the harm suffered. . . [Defendants] knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation.").  The Supreme Court in *Calder* reasoned that the defendant should have expected the "brunt" of the injury to occur in California because that is where the defendant's publication received the widest circulation. *Calder*, 465 U.S. at 788-89, Erickson has offered no equivalent argument or evidence to substantiate his claim that

10

Blake should have expected the brunt of Erickson's injuries to occur in Nebraska. Therefore, the *Calder* "effects test" does not establish jurisdiction over Blake.

Erickson's second theory argues that Blake is subject to jurisdiction in Nebraska because he uploaded his work to YouTube and for sale on iTunes. Erickson argues that these were business related activities designed to generate internet customers nationwide, including customers in Nebraska. In evaluating the question of whether activities on generally accessible web-based platforms should subject a defendant to specific personal jurisdiction, the Eighth Circuit has adopted the *Zippo* analytical framework. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003) ("We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction -, *i.e.*, ones in which we need only find 'minimum contacts.'"). In *Lakin*, the Eighth Circuit Court applied the following analysis to determine whether a defendant's website subjected the defendant to specific personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 710-11 (quoting *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)).

Applying the *Zippo* framework to the present case, the Court concludes that Blake's web-based activities are analogous to a "passive Web site that does little more than make information available to those who are interested in it [and] is not grounds for the exercise [of] personal jurisdiction." *Zippo*, 952 F.Supp. at 1124. Although Blake makes his work generally available on iTunes, there is no allegation that he derives substantial revenue from sales in Nebraska. The allegation of a single sale of Blake's work in Nebraska is an insufficient basis for jurisdiction. *See Pangaea, Inc. v. Flying Burrito, LLC*, No. 11-0000, — F.3d —, 2011 WL 3241859, at *5 n. 5 (8th Cir. August 1, 2011). There is no allegation that as a result of his sales on iTunes and CD Baby, that Blake reaches out to any specific jurisdiction, or that he is ever aware of the location of individuals who purchase his work. The Court is unable to conclude that placing Blake's work on iTunes and CD Baby, without more, is sufficient to confer jurisdiction over him in Nebraska. Further, Blake's work posted on YouTube does little more than make information accessible to those interested. Such a passive internet use does not give this Court personal jurisdiction over Blake.

4.    *Nebraska's Interest in Providing a Forum for its Residents and Convenience of the Parties*

While Nebraska may have an interest in providing a forum for its residents, "that interest does not overcome the substantial inconvenience for the parties" to litigate in Nebraska. *Miller*, 528 F.3d at 1092 ("The inconvenience to the parties and their witnesses, under the facts of this case, is a factor that militates against [the plaintiff] for purposes of establishing personal jurisdiction over [the defendant]."). Blake is unemployed and his family receives food stamp assistance. (Blake Decl., Filing No. 25-1 ¶ 1.) Requiring Blake to defend a lawsuit in Nebraska would be an undue burden on Blake given

the minimal contacts he has with Nebraska.  Any interest Nebraska may have in this litigation does not outweigh the undue burden that would be imposed on Blake if he were required to litigate in this forum.

After giving due consideration to the foregoing factors and principles, the Court concludes that "minimum requirements inherent in the concept of 'fair play and substantial justice . . . defeat the reasonableness of jurisdiction" in this case. *Burger King Corp.*, 471 U.S. at 477-78.

## **Venue**

Because the Court concludes that it does not have personal jurisdiction over Blake, venue is not proper in this district under either 28 U.S.C. § 1391 or § 1400.  Civil actions arising under any federal statute "relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  Count one of the Complaint arises under federal copyright laws.  The Court has determined that it has no personal jurisdiction over Blake, and thus neither he nor his agent reside or may be found in Nebraska.  Thus, venue is improper as to count one of the Complaint.

The Complaint requests the Court to take pendent jurisdiction over count two, for unfair competition, because it is substantially related to Erickson's claim under federal copyright law.  Venue is improper under count two regardless of whether it is governed by § 1391(a), (b), or § 1400.  Erickson has not sufficiently alleged that a substantial part of the events giving rise to his claim occurred in Nebraska.  Nor has he alleged that Blake is present in Nebraska.  Therefore, Venue is improper as to count two of the Complaint.

13

Where venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Blake's Motion requests that, should the Court find personal jurisdiction lacking, and venue improper, the case be transferred to the United States District Court for the District of Oregon under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3). The Court will grant this request and this case will be transferred.

## CONCLUSION

Because the Court lacks jurisdiction over Blake, it will not address the merits of Blake's Motion arising under Federal Rule of Civil Procedure 12(b)(6); and because venue is improper in this Court, this action will be transferred to the United States District Court for the District of Oregon.

Accordingly,

IT IS ORDERED

1.    Defendant Michael John Blake's Motion to Dismiss (Filing No. 11) is granted in part, as follows: the Clerk of the Court is directed to transfer this action to the United States District Court for the District of Oregon; and

2.    The Motion is otherwise denied based on the Court's lack of personal jurisdiction over the Defendant.

DATED this 10th day of August, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

14